*Case #: 2:05-CV-186-F+M-33 DNF*    FILED

*William Turner V General Electric*

The intent and purpose of the settlement was to provide *fair, adequate and reasonable relief and compensation to members of a class.*

06 APR 27 AM 9:44

*In particular, the settlement sought to provide Plaintiff and Settlement Class Members an ability to obtain predictable, certain and defined compensatory relief promptly.* Doc. 72-2, filed 4/17/06 (pg. 15, p. 2)

In order to benefit from the provisions of the settlement, members must first be aware of the settlement and their right to participate in the settlement, as well as afforded the opportunity to opt out to seek redress on their own, if they so choose. An honest and reasonable attempt to should be expected and required from the Defendants to identify, locate and notify the members of the class, which is estimated in Document 72-2 could number as high as a million members. These three key elements: identify, locate and notify are the basis on which the fairness and adequacy of this settlement approval should be considered, first and foremost.

The fairness of this settlement is predicated on the effectiveness of the notification process. A reasonable attempt at notification is paramount to the execution of a fair class settlement, and the subsequent approval of that settlement. This notification is not expected to be complete, nor absolute, nor undeniably and verifiably accurate to an impossible or unreasonable extent or degree, but it is not unreasonable, and should be expected, that the notification process would encompass a reasonable effort from the Defendants to honestly, and to the best of their ability within reason, utilize all information and access to information within their control and possession, to identify, locate and therefore notify members.

The question is, was this reasonable requirement met, and was an honest degree of effort exercised by the Defendants to provide the names and locations of the members to SDR NNC, Inc., and was a reasonable effort exercised by the defendants to first determine and then provide the description of the audience that was to be targeted through media notification. This determination and the description of the target audience were provided to OMD USA, Inc. in order to execute this media campaign.

It is critical, and it is a fact, that information provided to OMD USA, Inc. would predicate whether or not an effective media notification campaign was executed.

Affidavit of Antoinette Racioppo, Director of OMD USA, Inc., Document 72-8

*"GE Appliances represented to OMD that the primary target audience for the Class Notice was consumers 25 to 54 years of age with a household income of $50,000 or more. According to GE Appliances, that primary target audience represents the vast majority of consumers that **purchase mid-market appliances.**"*

Affidavit of Edward M. Waller, Jr., of Fowler White Boggs Banker P.A. Attorney of record for the Defendant General Electric Company. Doc 72-15:

*"Affiant has personal knowledge of the matters testified to herein and is competent to testify thereto." (pg. 2, p. 2)* "GE does not have the names of all class members who reside in Kentucky because, in general, **GE does not sell direct to consumers**" *(pg. 4, (7))*

The testimony and statements in the above referenced affidavits demonstrate an undisputable contradiction as to who the member target audience was for the purposes of media notification. The affidavit of OMD USA references "consumers that **purchase mid-market appliances**." The affidavit of Mr. Waller states "**GE does not sell direct to consumers**." There is common knowledge that GE is one of, if not the leading supplier of appliances to builders and developers. That is who their primary sales target has been for more than a few years. GE understands their target base for the purposes of kitchen appliance package sales to builders. By their own admittance as demonstrated in the above affidavits, they do not know just who a target audience of consumers (i.e.: Class Members) would be. The information supplied directly from the Defendant, to both parties of those affidavits (i.e.: GE's own legal counsel and OMD USA, Inc.) was clearly in conflict. This conflict negates that an identification of the target audience for the purposes of media advertising was accomplished; therefore proper notification by media effort was not accomplished. This failure severely inhibits a vast majority of the Settlement Class members from participation in the settlement. The disparity between the affidavits has remained unquestioned and unchallenged by Class Counsel.

The first requirement for a member in order to participate in benefits would be proper notification. This has not been met by the media notice campaign.

The second method of notification was by direct mail based on a data base of 445,464 names submitted by the Defendants to SDR NNC, Inc. This data base *"included all persons who had either mailed to GE a product registration card or communicated with GE about any of the refrigerators subject to the Settlement."* (Affidavit of Ken Edwards, document 72-7) The question remains, was a reasonable effort put forth by the Defendants to provide data bases in their possession to SDR NNC, Inc. in order to identify, locate and notify owners of the refrigerators listed in the Settlement as defective. The data bases are available and there is no denying that there are possibly several at various locations. One need only track, with some degree of effort, the various companies that have managed service, part and warranty data records for GE over the past five years. Information is readily available to anyone, including Class Counsel, as to the various software programs and administrative processes that were utilized to track customers, service repairs, parts replacements, manufacturer warranty claims, and extended warranty and insurance claims. It is not unreasonable to hope, and expect that the legal representatives of the Settlement Class would exert an effort to investigate and verify that all, or at the very least most, of the data bases that are and have been in existence were in fact accessed, retrieved, and provided to SDR NNC Inc. It would be appropriate, if not paramount, that the nature of the data base supplied to SDR NNC be disclosed prior to the final approval of this settlement. From which company, of the several that managed GE appliance records over the past five years, was this data base

supplied from. From what data management applications and programs, of the several that have been in existence, was the data base assembled from.

BringGoodThingsToLife.org was contacted by several owners of the refrigerators listed in Exhibit "A" who reported that they either had not received claim forms, did not receive them in time to meet deadlines, or they experienced difficulty in getting through the automated phone system, or could not complete their intent and effort to speak to a customer service representative at the phone number published in Settlement Class Notices. A critical question is raised regarding the timeliness of the dissemination of the notification forms by mail. Evidence suggests, per our contacts and information, that timeliness was not a factor met in the dissemination of notice. In fact, in one case it is blatantly disturbing that the notice was sent to a Settlement Member one day *after* the deadline for opting out or objecting. This consumer is in GE's own records as having called to request forms on March 7, 2006, as well as being a consumer who had previous repairs and should have been in the data base supplied to NNC. **Postmark on the envelope was March 15, 2006.**

*The district court "is entitled to rely upon the judgment of experienced counsel for the parties."* (pg. 17, doc 72-2) *"Class Counsel has diligently pursued the interests of Plaintiff and the Class."* (pg. 14, Document 72-2) Although there is no denying that Counsel for the Class has indeed expended considerable time, labor and effort on behalf of the Settlement Class to investigate this matter, analyze facts, communicate with class members and negotiate the terms of this settlement with the Defendants, they are not the only entities who have been involved in this matter, nor do they possess exclusively the considerable knowledge, experience and facts as would relate to this settlement and the actual benefits that will be received by class members if this settlement is approved.

Extensive and time consuming work, based solely on knowledge and true pursuit of the interests of a class of persons defined as consumers who owned one of these refrigerators in Island Walk, was initiated, enacted and pursued first and foremost by certain individuals within the community of Island Walk. The person most knowledgeable of the facts of this case at that time was Catherine Cannivet, and it was because of that specific knowledge, obtained by diligent investigation and acquisition of evidence, combined with the time and effort also put forth by Vinnie Sullivan, that the success of Island Walk was obtained for 1000 or more residents. That work, investigation, acquisition of evidence, dedication, and success has been utilized in Document 72-2, page 2, II Background – Investigation Prior To Filing The Complaint, for purposes of describing to the Court the nature, history and facts of the success of that effort in Island Walk. Furthermore, reference is made to the number of reports both in newspapers and television regarding Island Walk's victory. For the record, a calculated and concerted effort was put forth by Island Walk representative Catherine Cannivet to contact local media in order to then pursue remedy for what was known to be factual – that the defective units were not limited to the community of Island Walk. This effort to utilize media, and the success of that effort, is also referenced on page 2 for purposes of describing history of facts related to this case.

Throughout the past year and a half, other members of the community also participated with Catherine Cannivet and Nancy Grogan in the gathering of information, scheduling of public meetings, contacting of public officials, preparing and submitting complaints to appropriate government authoritative agencies, establishing a website for the dissemination and gathering of information to and from the public, and countless hours spent communicating by E-mail and phone to members of the potential class. Additional considerable time has been invested by Nancy Grogan and Catherine Cannivet to diligently investigate, at length and to the best of their ability, every complaint, concern or suspicion that arose. Hard evidence was sought and obtained and every information source available was utilized and pursued, including the communications and information supplied to us by GE employees – current and ex. This documentation entails surveys, E-mails, letters, actual refrigerator doors and parts, pictures, video, and phone notes. To date, 716,804 requests (hits) are recorded to the website BringGoodThingsToLife.org., established only one year ago in April of 2005. To date, 2,833 E-mail communications have been received from consumers across the country. 95 % of those E-mail communications were responded to with replies, advise, information, counsel, and encouragement.

In addition, it is through our efforts at BringGoodThingsToLife.org, that the 20 and 25 cubic models of refrigerators were finally included in the Settlement Agreement. These particular models were not going to be included in the Settlement, and it was only after we met with, and supplied the Attorney General Office of the state of Florida with the evidence of the 20 and 25 cubic foot failures, that Attorney General Charles Crist stepped in and demanded that they be included.

There is no other entity other than Counsel involved in this matter and the Defendants themselves, who posses more knowledge, experience and evidence as it relates to the facts in this case. We are qualified to testify and comment as representatives on behalf of a defined Settlement Class, who as of this date remains grossly unaware of the events that are to take place at this hearing on April 27, 2006. We neither seek, nor will receive monetary compensation for our time invested to date, nor will any final Court approval or ruling with regards to this settlement benefit us financially in any way. Our true and only purpose from the onset and throughout the events of the past year and a half has been to service and protect our fellow citizens from a product that was dangerous and defective, and to protect innocent consumers from a corporate policy and behavior that we felt was unfair, irresponsible and wrong. At no time since the filing of this class action has Class Counsel contacted us to inquire, investigate or request information.

Information supplied to us at BringGoodThingsToLife.org from several members of the defined class, via phone and E-mail contacts, raises serious question and concern as to whether notification by mail was effectively and properly executed. More than a few consumers who have had previous repairs performed by GE, and whose record of address would certainly be retrievable by GE, did not receive claim forms. Consumers have also reported that when they call one of the several available and published GE phone numbers (other than the number set up for Settlement Members) to schedule repair for

their refrigerator, they were not, and are not being informed by the GE CR representative, nor the GE tech, that their unit is part of a nationwide settlement and that they may be entitled to benefits under that settlement. To the contrary, they are indeed instead informed that they may have to pay for the repair of their refrigerator. Only those consumers who have received information of the settlement by direct mail or have knowledge of the specific phone number to call (866-839-4463) for matters related to the settlement are realizing any of the benefits that were/are in place.

A consumer in particular contacted BGTTL by phone at a time soon after the schedule date of notification began on January 13, 2006. The name of this consumer is Lisa Missaghian, (contact information available upon request). Mrs. Missaghian had experienced previous repairs performed by GE. Mrs. Missaghian, as is not uncommon, did not have computer access in order to download and print out the claims forms necessary to register for benefits. The phone number for participants to call, as was published in the Notice of Settlement, was provided to this consumer by BGTTL with the instruction and warning of the deadlines in place for opting out and registering for benefits. Approximately one month later, on March 7th 2006, this consumer then contacted BGTTL again and reported that she had not received the notification and claim forms from GE even though she reported she had called the phone number that was provided to her. On March 7th 2006 she called the same phone number as was previously called and requested the forms once again. To verify that her order for the claim forms was indeed logged in, she then called a second time to ensure that the forms would be mailed as the deadline for opting out or objecting was 6 days away. The forms were finally, and actually received almost a week after the deadline of March 14th 2006.

**The postmark on the envelope (available upon request) clearly indicates a mail date of 03/15/2006 from the GE Moisture Class Settlement, 2670 Executive Dr. Suite A, Indianapolis, In. 46241.**

There is sufficient question as to whether or not a sufficient data base and sufficient competent effort was used to notify members by mail. The evidence is suggesting that GE did not administer a good faith or reasonable effort through customer service phone contact conversation with members, direct mail contact, and media notification. This can be confirmed by the fact that as of April 17, 2006 only 46,189 claim forms had been returned out of a class estimated to be as high as one million members.

*The Settlement Class, which the Court has conditionally certified, consists of: all persons who, as of January 13, 2006, purchased, owned, or currently own a Refrigerator listed on Attachment "A".*

The Settlement Class definition above clearly encompasses all members who received direct mail notification or benefited from the media notification. *as well as* those who did not. The class has been defined, and the Class as a whole will be subject to any ruling a Court enters with regards to this Settlement approval. It specifically states in the Notice Of Proposed Class Settlement that "*If you are a Settlement Class Member and do not request exclusion from the Settlement Class, you will be a Settlement Class Member if*

*certification of the Settlement Class is finally approved and will be bound by the terms of the Settlement"*.

Furthermore, should final certification of the Settlement Class be granted, and final approval granted to the Settlement, all Settlement Class Members' Claims against GE will be forever released. As stated in the Notice Of Proposed Class Settlement, *it will have been deemed that all Class Members have agreed to the terms of the release*, and this will discharge GE from any further or future responsibility. *"GE shall be released and fully discharged by the Plaintiff and each Settlement Class member from any claim, liability, right, demand, suit, matter, obligation, damage, loss or cost, action or cause of action, of every kind and description, in this Court or any other Court or forum, regardless of legal theory"*. Hundreds of thousands of consumers, possibly one million, have not participated in benefits because of ineffective and insufficient notice, and will be barred from any future remedy because they were not aware of their opportunity or right to participate.

Per the Notice Of Proposed Class Settlement, all members will be bound by all Orders and Judgments of the Court. The eligibility requirements to participate in benefits were specific as were the deadline dates to register and submit claims.

*"Failure To Submit On Or Before Deadline Results In A Forfeiture Of This Benefit"*
This notice appears on each of the four possible Claim Forms with the deadline dates.

The fact is, that all of the deadline dates applicable to the benefits that were available for Settlement Members to claim has expired as of April 13, 2006 with the exception of the refrigerator exchange. Some consumers have been reporting to us for some time that they are having difficulty in obtaining a replacement refrigerator, even though they have experienced several repairs. A consumer with 8 repairs for instance is informed that only one or two of the repairs will be considered moisture related, and they will have to accept yet another repair. The best predictor of future behavior is past performance, and so we do not expect this policy on GE's part to change with regards to refrigerator replacements.

Final approval of the Settlement as it presently stands will confirm the exclusion of hundreds of thousands of possible participants.

The final approval of this Settlement is not a fair, reasonable or equitable compromise or resolution between the parties. In fact, what it is and what it will result in is to grant the Defendant an extremely exorbitant and unfair fire-wall of legal protection from any future claims with respect to the defects in the refrigerators; including any past or future damage to property, any claim of loss or financial injury sustained by innocent parties as a result of these defects, and for which the Defendant is wholly, undeniably and certainly solely responsible and liable for. It also will bar any Settlement Member from making any future claim for breach or violation of any federal, state, or local statute, regulation or ordinance, case law, common law, or other law. The verbiage in the Notice Of Proposed Class Settlement, page 4, paragraph V. under RELEASES, will strip away and forever

deny all rights bestowed upon citizens to seek relief in any legal proceeding, or a Court of Law, for any liable action or responsibility of GE, that has resulted in a loss, damage or financial injury caused by these refrigerators.

The approval of this Settlement would be grossly unfair and unjust to the members, and in fact provides the most extreme benefits and protection to the Defendant. GE has not performed the terms of the Settlement in good faith as it pertains to notification to Class Members, nor have they followed the spirit of the intent of the compromised agreement.

GE has recently made a promise that they will be "lenient" with the deadlines. Again, the best predictor of future behavior is past performance. GE is on record several times in several press publications and television broadcasts with statements to the public through the press regarding the refrigerator problems. Spokespersons for GE made claims that the problem refrigerators were an isolated case, first limited to Island Walk, then limited to hot humid environments such as South Florida. As such, this was not true; the problem refrigerators indeed were across the country. They finally admitted that they had been aware of problems a few years back, which resulted in the initiation of a Special Service Program to address the issues. They failed to notify the owners of these refrigerators of this program, and instead engaged in a dishonest and unfair practice of billing the consumer to repair the defects in the appliance, rather than applying the Special Service Program to everyone fairly. Additionally, they sold extended warranty contracts on these units of refrigerators that they had already identified as having problems and for which they had a Special Service Program already in place.

A consistent pattern of dishonesty and denial is the one certainty that the owners of these appliances can count on. Another certainty that Class Members can count on, based on past experience, is the difficulty in securing fair treatment from GE when they try to address their refrigerator issues, thus the reason for the Class Action in the first place.

Are we asked to believe based on GE's word, that they will change corporate policy and now treat customers with honesty, fairness and respect? Any promise from GE should be entered into the Settlement Agreement, put it in writing for the members of the class.

*[Signature]* 4-27-2006