**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION**

| | |
|---|---|
| **WIILIAM F. TURNER, on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**GENERAL ELECTRIC COMPANY,**<br><br>**Defendant.** | **CASE NO.: 2:05-CV-186-FtM-33DNF** |

**PLAINTIFF'S RESPONSE TO CATHERINE T. CANNIVET'S OBJECTIONS TO APPROVAL OF SETTLEMENT AGREEMENT, APPROVAL OF APPOINTMENT OF LEAD SETTLEMENT CLASS COUNSEL, APPROVAL OF SETTLEMENT CLASS REPRESENTATIVE, AND APPROVAL OF ATTORNEYS' FEES**

**I.   INTRODUCTION**

On August 14, 2006, Catherine T. Cannivet, who purports to be a member of the Settlement Class in this Action, filed an objection to the Settlement that is before this Court. On August 16, 2006, Ms. Cannivet served a declaration in support of that objection in which she further enumerated her objections to the Settlement.[1]  Assuming that Ms. Cannivet is a Settlement Class Member and has standing to object, her objection is untimely and should not be heard by the Court.

Substantively, Ms. Cannivet fails to support her conclusory objections with any legal authority or with substantiated facts which might show that the Settlement is unfair to Class Members, much less any facts which show that the Settlenment is unfair to her. Likewise, she baldly asserts, again without any legal citation and without any substantiated factual support, that

---

[1] In her August 16, 2006 filing, Ms. Cannivet reiterated and broadened upon the objections she first stated in her August 14, 2006 filing. She also preceded the objections with a seven-page "declaration" which contains a recitation of facts (unsubstantiated with evidence and not sworn or attested to) mixed with editorial comment.

a conflict exists between the Settlement Class Representative and the Members of the Settlement Class and that Settlement Class Counsel have failed to carry out their duties in representing the Settlement Class. In the absence of either legal or factual support, Ms. Cannivet's objections ring hollow and should not move the Court from its prior finding that the proposed Settlement is fair, reasonable and adequate.[2]

For all of these reasons, Ms. Cannivet's objections must be deemed waived and must not be considered by the Court.

## II.     MATERIAL FACTS

Plaintiff previously filed Plaintiff's Motion for Final Approval of Settlement, Certification of Settlement Class, Approval of Attorneys' Fees and Settlement Class Representative Incentive Award (Docket No. 72), and Plaintiff's Memorandum in Support of Plaintiff's Motion for Final Approval of Settlement, Certification of Settlement Class, Approval of Attorneys' Fees and Settlement Class Representative Incentive Award (Docket No. 72-2), which provide a complete factual background of the Settlement, a discussion of its terms and set forth the reasons – legal and factual – why final certification of the Settlement Class, Final Approval of the Settlement, and Approval of Settlement Class Counsel's fees and Settlement Class Representative Incentive Award all are warranted. Subsequently, on August 11, 2006, Plaintiff filed Plaintiff's Supplemental Memorandum in Support of Plaintiff's Motion for Final Approval of Settlement, Certification of Settlement Class, Approval of Attorneys' Fees and Settlement Class Representative Incentive Award (Docket No. 86-1), which provides complete

---

[2] Oddly, Ms. Cannivet's belated objections directly contradict her prior representation to the Court that she was not objecting to the Settlement, which she herself termed a "very good, fair adequate settlement." *See Turner et al. v. General Electric Co.*, No. 2:05-CV-186-FTM-33 DNF (M.D. Fla., Ft. Myers Division) April 27, 2006 Fairness Hearing Transcript at 11 (Ex. A, hereto.)("Fairness Hrg. Tr.").

factual background of the Supplemental Notice Program and further demonstrates why Final Approval is warranted. Plaintiff hereby incorporates herein these previously-filed motion and memoranda.

On December 22, 2005, this Court issued an Order Preliminarily Approving Settlement, Conditionally Certifying Settlement Class, Appointing Settlement Class Counsel and Settlement Class Representative, Approving Form of Class Notice, and Scheduling Fairness Hearing (Docket No. 60). In that Order, the Court, among other things: approved the Notice Plan; scheduled a Fairness Hearing for April 27, 2006; and established March 14, 2006 as the deadline by which Settlement Class Members wishing to object to the Settlement had to file and serve their objections.

On January 12, 2006, Notice of the Settlement was disseminated to the Settlement Class as follows:

> (a) <u>Direct-Mail Notice</u>: GE sent a Class Notice and a Claim Form by first-class mail to 445,464 Class Members for whom it had street addresses. All addresses were run through the "National Change of Address Database" or other similar service prior to sending the direct-mail Class Notice;
>
> (b) <u>Publication Notice</u>: GE placed ads containing the Summary Notice in the following newspaper supplements and consumer magazines:
>
>> (i) A two-fifths-page ad placed twice in *Parade*, with a circulation of 33,900,000. *Parade* is carried in the Sunday edition of 351 newspapers and is the highest circulating publication in the United States. Carrier newspapers serve major urban and suburban markets in the United States;

>    (ii) A two-fifths-page ad placed once in *USA Weekend*, with a circulation of 23,040,509. *USA Weekend* is carried in the weekend edition of 608 daily newspapers in major markets complementing the U.S. markets served by *Parade*;
>
>    (iii) A one-half-page ad placed once in *People* magazine, a weekly publication with a national circulation of 3,779,640;
>
>    (iv) A one-half-page ad placed once in *Better Homes & Gardens,* a monthly publication with a national circulation of 7,634,170;
>
>    (v) A full-page ad placed once in *Reader's Digest*, a monthly publication with a circulation of 10,128,943;
>
>    (c) <u>Web Site Notice</u>: GE created and promoted a web page located at *www.geappliances.com/classaction* to provide Class Members with information about the settlement, including the Settlement Agreement, the Class Notice, the Claim Form and relevant contact information, all of which may be downloaded.

*See* Stipulation Regarding Supplemental Notice (Docket No. 79) at 2.

Pursuant to the Order Preliminarily Approving the Settlement, the deadline to file and serve an objection to the Settlement ("Objection Date") was March 14, 2006. As of the Objection Date, only four objections had been filed – none by Ms. Cannivet. By contrast, more than 52,000 Claim Forms had been submitted to the Claims Admininstrator. *Id*.

On April 27, 2006, the parties appeared before the Court to hear Plaintiff's Motion for Final Approval of the Settlement that had been filed in this Action. *Id.* at 3.

At that hearing, Plaintiff William Turner appeared and offered testimony in support of Final Approval of the Settlement. No objectors appeared to object to the Final Approval of the

Settlement. *Id.* Ms. Cannivet – who did not file an objection but who filed on the date of the Fairness Hearing her Statement and Plea (Docket No. 74) did appear at that hearing, but she made clear that she was not objecting to the Settlement. *See* Fairness Hrg. Tr. at 5, 11.[3] Indeed, at the time, Ms. Cannivet indicated that she was "very pleased" with the Settlement and that in her estimation the Settlement was a "very good, fair adequate settlement." *Id.* at 11.

Ms. Cannivet also made sweeping assertions about alleged flaws in the Notice Plan. The parties, however, addressed this as part of their presentation regarding Notice. The parties notified the Court that the Notice Plan that had been approved by the Court at the Preliminary Approval Hearing had been carried out and that more than 450,000 Settlement Class Members nationwide had been sent Notice of the Settlement via direct mail either as part of the original Notice Plan mailing or as a result of Settlement Class Members having contacted GE and requesting that Notice be mailed to them. *See* Stipulation Regarding Supplemental Notice (Docket No. 79) at 3.

The Court then noted that the efforts to provide Notice to the Settlement Class were "above and beyond the call of duty as to what's required" and that "both sides went out of their way to try to provide notification to the members of the class . . . ." *See* Fairness Hrg. Tr.at 21, 27.

However, at the hearing, GE advised the Court that an unknown number of potentially identifiable Settlement Class Members might not have received Notice by direct mail. These Settlement Class Members are persons who purchased Refrigerators that are subject to the

---

[3] *See* Declaration in Support of Catherine T. Cannivet's Objections to Approval of Settlement Agreement, Approval of Appointment of Lead Settlement Class Counsel, Approval of Settlement Class Representative, and Approval of Attorneys' Fees (filed August 16, 2006) ("Cannivet Declaration") (Docket No. 89) at 6 ("Nevertheless, I did not object to the Settlement Agreement by March 14, 2006").

Settlement, but who did not return a product registration card to GE, did not make a request for repair to GE and did not purchase an extended service contract from GE, but who, nevertheless, may be identifiable. Accordingly, the Court continued the Fairness Hearing to allow time for Notice to be sent to these other Settlement Class Members. *See* Stipulation Regarding Suplemental Notice (Docket No. 79) at 4.

On May 23, 2006, the parties filed a Stipulation Regarding Supplemental Notice (Docket No. 79), in which GE agreed to send a Class Notice and Claim Form by first-class mail to all persons on the "Supplemental Mailing List" -- i.e., persons who purchased Refrigerators that are subject to the Settlement, but who did not return a product registration card to GE, did not make a request for repair to GE and did not purchase an extended service contract from GE, but who, nevertheless, may be identifiable). This additional mailing of Notice was denominated the "Supplemental Notice Program," and the Notice disseminated pursuant to the Supplemental Notice Program was to be referred to as the "Supplemental Notice." *See* Stipulation Regarding Supplemental Notice (Docket No. 79) at 4.

On May 24, 2006, the Court entered an Order Approving and Ratifying Stipulation Regarding Supplemental Notice (Docket No. 81). Pursuant to that May 24, 2006 Order, the Settlement Class Members on the Supplemental Mailing List were to receive the Supplemental Notice and were subject to an August 5, 2006 deadline for submitting Requests for Exclusions and filing. Pursuant to the Stipulation and Order, mailing of the Supplemental Notice began on June 6, 2006, and between June 6, 2006 and August 11, 2006, 263,822 Supplemental Notices (and Claim Forms) were mailed to persons on the Supplemental Mailing List or others who requested the Supplemental Notice. *See* Plainttiff's Supplemental Memorandum in Support of Plaintiff's Motion for Final Approval of Settlement, Certification of Settlement Class, Approval

of Attorneys' Fees and Settlement Class Representative Incentive Award (Docket 86-1) at 7.

The Supplemental Notice provided that objections to the Settlement would be considered by the Court at the Fairness Hearing on August 21, 2006, only if any such objections were filed with the Court on or before August 5, 2006.

To date, 707,490 Notices or Supplemental Notices have been mailed to Settlement Class Members. *Id.* And, the Claims Administrator has received more than 64,000 Claims. *Id.*

By contrast, only six objections have been filed, including this one from Ms. Cannivet. *Id.* at 10.

## III.   ARGUMENT

### A.   Ms. Cannivet's Objections Are Untimely.

Ms. Cannivet's objections are untimely and for that reason alone should not be considered.[4] *See., e.g., In re WorldCom, Inc. Sec. Litig.* 388 F. Supp. 2d 319, 341 (S.D.N.Y. 2005).

Ms. Cannivet indicates that she received Notice of the Settlement – a fact which is supported by her appearance at the Fairness Hearing, the date of which (April 27, 2006) was enumerated in the Notice. Assuming that Ms. Cannivet was a recipient of the Notice, the deadline for her objection was March 14, 2006, making her objection untimely by months. However, even if one were to assume that Ms. Cannivet was on the Supplemental Mailing List and was subject to the deadlines in the Supplemental Notice, the deadline for objections pursuant to that Supplemental Notice was August 5, 2006 – a deadline which passed more than a week

---

[4] Plaintiff notes that the only proof of Ms. Cannivet's membership in the Settlement Class is her unsubstantiated assertion in her objection as to the Model and Serial Number of her Refrigerator. She has not provided a copy of the Notice she received nor any invoice relating to the purchase of the Refrigerator.

7

before the filing of Ms. Cannivet's objections. In either event, Ms. Cannivet's objections were filed after the applicable deadline and must not be considered.

Importantly, at the April 27, 2006 Fairness Hearing, the Court admonished Ms. Cannivet for attempting to circumvent Court procedure through late filings:

> THE COURT: What I want to ask you about is this, and I'm going to give you a few moments, okay, I'll give you up to five minutes to address the Court. The problem is that you've come here at the very last moment without telling us in advance that you wanted to say something, without having filed something in the records. That's not the way -- . . . .
>
> * * * *
>
> THE COURT: -- fair to people. And quite frankly, I could right now -- I think I would certainly be within my rights to tell you you didn't timely file this and not give you the opportunity to say anything at all.

*See Fairness Hrg. Tr.* at 9.

Thus admonished, Ms. Cannivet should not now be rewarded for yet again failing to follow clearly established deadlines and Court procedures and filing her objection on August 14, 2006 and following that with yet another filing on August 16, 2006.[5]

**B. Ms. Cannivet's Objections Regarding Notice, Releases and Claims Administration Are Without Legal or Factual Support, and Are Wrong.**

---

[5] Ms. Cannivet asserts that Settlement Class Counsel wrongfully represented that she was not a member of the Settlement Class and has since refused her requests to acknowledge her status as a Settlement Class Member. This is not so. See, Declaration of Scott Wm Weinstein August 18, 2006. At the April 27, 2006, Ms. Cannivet provided no evidence of her status as a Settlement Class Member. Even so, Settlement Class Counsel encouraged the Court to allow Ms. Cannivet to address the Court, and the Court did. After the Fairness Hearing, Mr. Weinstein advised Ms. Cannivet that she very well may be a Settlement Class Member, as she may have once owned an affected refrigerator. But if, as she indicated to Mr. Weinstein, GE had voluntarily replaced it well before this action was filed, and Ms. Cannivet never incurred any repair bills for the defective one, there were no damages for which Ms. Cannivet could make a Claim under the Settlement. Moreover, even if Settlement Class Counsel may have been mistaken that Ms. Cannivet was not a Settlement Class Member, that statement has in no way prevented Ms. Cannivet from making court filings or speaking in open court. This objection, thus, is frivolous. Assuming Ms. Cannivet is a Settlement Class Member, she was at all times free to avail herself of the Settlement per the details of the Settlement as described in the Notice that she herself acknowledges that she received.

Ms. Cannivet contends that the Settlement should not be approved because: (1) the notice was inadequate; (2) the Settlement will strip the rights of the Settlement Class Members to file complaints with state and federal authorities; (3) the Settlement doesn't protect Settlement Class Members who have not had problems with their Refrigerators; and (d) the Claims Administration process is inadequate and without safeguards. Each of these objections – offered without underlying legal authority and underlying record evidence fails.

### 1. Notice Was Adequate and Satisfied Due Process.

As detailed above, on April 27, 2006, this Court found that the efforts to provide Notice to the Settlement Class were "above and beyond the call of duty as to what's required" and that "both sides went out of their way to try to provide notification to the members of the class, . . . ." *See Fairness Hrg. Tr.* at 21, 27. Since that finding, an additional 263,822 Supplemental Notices were sent by direct-mail, meaning that a total of 707,490 Notices or Supplemental Notices were mailed to Settlement Class Members. *See* Plainttiff's Supplemental Memorandum in Support of Plaintiff's Motion for Final Approval of Settlement, Certification of Settlement Class, Approval of Attorneys' Fees and Settlement Class Representative Incentive Award (Docket 86-1) at 7.

In her August 14, 2006 objections and her August 16, 2006 expansion upon her August 14, 2006 objections, Ms. Cannivet suggests that this was not sufficient, that GE should have been able to provide direct-mail notice to additional Members of the Settlement Class. *See* Catherine T. Cannivet's Objections to Approval of Settlement Agreement, Approval of Appointment of Lead Settlement Class Counsel, Approval of Settlement Class Representative, And Approval of Attorneys' Fees (filed August 14, 2006) ("Cannivet Objection") (Docket No. 87) at 1; Declaration in Support of Catherine T. Cannivet's Objections to Approval of Settlement Agreement, Approval of Appointment of Lead Settlement Class Counsel, Approval of

9

Settlement Class Representative, And Approval of Attorneys' Fees (filed August 16, 2006) ("Cannivet Declaration") (Docket No. 89) at 7-10.

The fact remains, however, that approximately 70% (more than 700,000 of the estimated one-million Settlement Class Members) received direct-mail Notice.[6]

Ms. Cannivet also writes in her August 16, 2006 filing that the publication Notice was a "bad joke played on consumers." Cannivet Declaration at 8. In particular, Ms. Cannivet takes issue with the publication Notice for not enumerating various health and safety risks allegedly associated with the Refrigerators that are part of this Settlement. She is correct that no such health and safety risks are listed. There is a simple explanation for this fact. The publication Notice was not intended to serve as a public health notice. The Settlement here was not aimed at addressing a public health or public safety crisis.[7] The Settlement here was intended to provide consumers with repair and/or replacement of defective Refrigerators and reimbursement of monies expended by consumers to make repairs or to obtain replacement Refrigerators during the time period before the Settlement was agreed upon. Further, the content of the Notice and the Summary Notice (which was published nationwide) were approved by the Court.

The fact is that the massive direct-mail campaign (coupled with the Notice by publication effort that was undertaken) can hardly be described as inadequate.

### 2. **Settlement Class Members Were Not Stripped of Their Rights.**

---

[6] Ms. Cannivet's assertions that the internal records of appliance retailers could have been mined to extract addresses of Settlement Class Members and that GE intentionally relied on flawed warranty records as a source for Settlement Class Members' information are merely unsubstantiated speculation.

[7] Plaintiff does not seek to minimize any ill health effects or safety issues that Settlement Class Members suffered as a consequence of any defects in their Refrigerators. At the same time, however, Plaintiff is confident that Settlement Class Members do not need -- as Ms. Cannivet suggests they do -- a public notice to alert them not to eat spoiled or rotten food.

Ms. Cannivet's objection that Settlement Class Members have been stripped of their rights to complain to state and federal authorities similarly is unfounded. To begin, it is unclear what Ms. Cannivet is referring to when she writes, "Certain unlawful acts that the Defendant engaged in were never purported by class counsel to be represented in the complaint as a claim." Cannivet Objection at 2; Cannivet Declaration at 10. Indeed, while Ms. Cannivet has recited certain "facts" and provided editorial comment about GE's corporate behavior, she has provided no record evidence of any such unlawful acts. The fact is, the Complaint filed by Settlement Class Counsel contained well-researched, viable causes of action, which Settlement Class Counsel was in the process of litigating when the Settlement was reached and agreed upon.

Moreover, and more to the point, nothing in the Settlement prohibits or prevents any Member of the Settlement Class from contacting any state or federal official of their choosing to complain or otherwise discuss this Settlement or the corporate behavior of General Electric Company. They are free to do so. Further, the Settlement explicitly provides that any Settlement Class Member may submit a Request for Exclusion, opt-out of the Settlement and pursue his or her Claims against GE in whatever forum he or she so desired. *See* Settlement Agreement Between General Electric Company and Plaintiff (Docket No. 53-1) §8.

Nor is it the case that the Settlement fails to protect those Settlement Class Members' Refrigerators who have not yet experienced or manifest a Moisture-Related Problem. Indeed, the Additional Warranty Protection component of the Settlement is directed at these very persons: to provide them with warranty coverage of their Refrigerator now that the original warranties over those Refrigerators have long since lapsed (or to give them additional warranty

11

coverage after their existing service contract runs its course).[8] And, again, any Settlement Class Member who felt that the Settlement was unsatisfactory or who was worried that his or her rights were being prematurely truncated was free to submit a Request for Exclusion, opt-out of the Settlement and pursue his or her claims individually against GE.

The fact is that Settlement Class Members' Claims were not inappropriately compromised or released. The Settlement provides the Settlement Class Members with real, not illusory, Benefits – Additional Warranty Protection (extended warranty coverage of their Refrigerators), Reimbursement (reimbursement for monies previously expended by Settlement Class Members for service calls and/or repairs) and Refrigerator Exchange (replacement refrigerators for those Refrigerators that have suffered three or more unsuccessful Moisture-related service calls). The provision of these Benefits pursuant to the Settlement can hardly be denominated a "stripping" of Settlement Class Members' rights, but rather must be seen as an exercise of Settlement Class Members' rights to obtain redress and compensation under appropriate legal principles.[9]

### 3. **There Are Ample Safeguards Regarding the Claims Administration Process.**

---

[8] In her declaration, Ms. Cannivet implies that the Additional Warranty Protection is inadequate by pointing to the relief she claims she was able to obtain for residents of Island Walk, Florida. *See* Cannivet Declaration at 2. Regardless of whether Ms. Cannivet's efforts actually did obtain any relief for Island Walk residents, the three-year warranties that Ms. Cannivet asserts she negotiated for covered **new** refrigerators, not existing refrigerators. By contrast, in the Settlement negotiated by Settlement Class Counsel, the Additional Warranty Protection extends the warranty on existing Refrigerators already owned by Settlement Class Members, most of which are at least 3 years old.

[9] And, in any event, "'The law is well-established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct. Adequate representation of a particular claim is determined by the alignment of interests of class members, not proof of vigorous pursuit of that claim.'" *See In re WorldCom*, 388 F. Supp. 2d at 341. (citation omitted).

Also untrue is Ms. Cannivet's assertion that Settlement Class Counsel failed to negotiate for and obtain procedural safeguards concerning the Claims Administration and Notice processes.  The Settlement allows Class Counsel to actively participte in all aspects of Claim Administration, which Settlement Class Counsel has done by responding to literally hundreds of communications from Settlement Class Members concerning the Settlement and the Claims Process.  *See* Plaintiff's Supplemental Memorandum in Support of Plaintiff's Motion for Final Approval of Settlement, Certification of Settlement Class, Approval of Attorneys' Fees and Settlement Class Representative Incentive Award (Docket No. 86-1) at 7.  And, where those Settlement Class Members have encountered difficulties in filling out or submitting a Claim, Class Counsel have worked with GE to assist these Settlement Class Members in making their Claims.  *Id.*

In addition, Settlement Class Counsel, pursuant to the Settlement's own terms, have monitored the Claims Administration process through reports received from GE.  Indeed, the Settlement (Docket No. 53-1) specifically provides in section 6.2 that: "GE shall provide quarterly reports to Settlement Class Counsel that specify the number of claims for Benefits by category as well as the Benefits provided to Settlement Class Members, and that contain other material information that the parties mutually deem appropriate and that is agreed to by GE and Plaintiff."

Further, the Court retains jurisdiction over this matter to resolve disputes that may arise in the administration of the settlement.  Specifically, Settlement Class Counsel specifically negotiated for and obtained the following protection for Settlement Class Members contained in section 14.2 of the Settlement: "The Special Master shall resolve any disputes between the parties to this Agreement regarding the terms and conditions of this Agreement and/or the

parties' rights under this Agreement. Any decision by the Special Master shall be subject to review *de novo* by the Court upon request of GE and/or Plaintiff."

Thus, while some Settlement Class Members may have encountered difficulties in submitting Claims and/or in having their Claims administered, there are ample safeguards in place to make sure that those difficulties are addressed and resolved.

### C. Settlement Class Counsel and the Settlement Class Representative Adequately Represented the Settlement Class.

After taking aim at the Settlement itself, Ms. Cannivet then sets her sights on Settlement Class Counsel and the Settlement Class Representative. Of course, her objections regarding Settlement Class Counsel ring hollow in the face of Ms. Cannivet's prior laudatory comments concerning Settlement Class Counsel and their efforts:

> "I am ecstatic with your work, unbelievable!! You got 'em!!! You didn't miss a thing, and I couldn't be more pleased. So the TFX's and PSS's aren't mentioned, you more than covered everything else so I don't care at this point . . . . You must have worked your ass off, I know this. Only thing is, I think the attorney fees are a little low, you deserve much more compensation than is mentioned. Can't you get a little more? Like double?
>
> "Sorry if I put you through any trouble or aggravation, I just want you to know that you did one hell of a job in a VERY short time. Unbelievably impressive work!
>
> Cathy"

Declaration of Scott Wm. Weinstein in Response to Objection and Declaration Filed by Catherine T. Cannivet ("Weinstein Declaration") (Ex. B) ¶8 (quoting Email from C. Cannivet to S. Weinstein (12/13/05)).

> "[T]here is no denying that Counsel for the Class has indeed expended considerable time, labor and effort on behalf of the Settlement Class to investigate this matter, analyze facts, communicate with class members and negotiate the terms of the Settlement with the Defendants."

Statement and Plea filed by Catherine Cannivet (04/27/06) (Docket No. 74) at 3

> "You accomplished an enormous task in record time, and I realize the complexity of the situation. The settlement agreement provided fair and equitable relief and compensation to members, it was more than satisfactory, you did a fine job."

*Id.* ¶12 (quoting Email from C. Cannivet to S. Weinstein (04/27/06)).

Moreover, her assertions about Settlement Class Counsel are not well taken. As detailed just above, Settlement Class Counsel successfully obtained monitoring mechanisms concerning Notice and Claims Administration. Notice was scrutinized by and approved by the Court, and the Settlement itself calls for monitoring of the Claims Administration process and provides for a dispute resolution process in the event of dispute.

Ms. Cannivet's assertion that the Settlement Class Representative was somehow inadequate and that Settlement Class Counsel was not aware of such inadequacy is also misplaced. William Turner has been nothing but zealous in his pursuit of his Claims and of the Claims of the absent Settlement Class Members. He stepped forward to serve as Class Representative so that the original Complaint could be filed. He permitted a media crew to come into his home to question him about his Refrigerator and to videotape that Refrigerator. *See Id.* ¶15. And, most notably, Mr. Turner stepped forward at the April 27, 2006 Fairness Hearing and testified as to his efforts and his faith in the merits of the Settlement. *See* Fairness Hrg. Tr. at 25-26.

Ms. Cannivet's statement that Mr. Turner "blamed class members for not registering for benefits," *see* Cannivet Declaration at 20, mischaracterizes his remarks. Moreover, Ms. Cannivet implies that Plaintiff had "past business and political relationships and encounters with the Defendant" that put him in conflict with the Settlement Class and that Settlement Class

15

Counsel ignored this information, asserting that before his retirement, Mr. Turner worked for NBC Television, which was in turn owned by General Electric Company. Yet, this is mere innuendo and insinuation. Ms. Cannivet has offered not a whit of evidence to substantiate her charges that Mr. Turner ever acted in a manner at odds with the interest of the Settlement Class. The truth is, Ms. Cannivet was thankful to Mr. Turner for stepping forward as the Settlement Class Representative and referred to him as a "hero." *See* Weinstein Declaration ¶10.

But, her smear campaign does not end there. Ms. Cannivet asserts that Settlement Class Counsel ignored communications from her and other Settlement Class Members. This is also incorrect. Settlement Class Counsel – in particular Mr. Scott Wm. Weinstein – received and responded to hundreds of telephone calls, letters and emails from Settlement Class Members, including Ms. Cannivet. *See* Plaintiff's Supplemental Memorandum in Support of Plaintiff's Motion for Final Approval of Settlement, Certification of Settlement Class, Approval of Attorneys' Fees and Settlement Class Representative Incentive Award (Docket No. 86-1) at 7; Weinstein Declaration ¶¶ 6-12. Indeed, Ms. Cannivet in her August 16, 2006 declaration contradicts herself by acknowledging that Settlement Class Counsel met with her at her home and admitting she communicated directly with Settlement Class Counsel for months after the filing of the Complaint in this Action. *See* Cannivet Declaration at 3.

In addition, Ms. Cannivet is in error when she states that Settlement Class Counsel failed to avail themselves of pertinent information held by governmental agencies, including the Florida Attorney General's office. Mr. Weinstein had numerous communications with the Office of the Florida Attorney General during which he discussed the information known to that office and how it compared to information obtained by Settlement Class Counsel in discovery. *See* Weinstein Declaration ¶16. Ms. Cannivet does not explain how the information supposedly

16

contained in the reports she cites in her objections 3.2.1 through 3.2.3 would have materially impacted the Settlement now before the Court.

Finally, Ms. Cannivet objects to the attorneys' fees sought by Plaintiff and Settlement Class Counsel and objects that through Settlement Class Counsel's supposedly lackluster efforts, Settlement Class Class Members allegedly have been placed in a worse position than if the litigation had not been brought. Apparently, Ms. Cannivet does not recall her December 2005 email to Mr. Weinstein wherein she wrote that she was "ecstatic" with the work of Settlement Class Counsel and that Settlement Class Counsel surely deserved "double" the compensation that they are slated to receive.

Ms. Cannivet also conveniently overlooks the actual benefits that Settlement Class Counsel negotiated for and which were actually received by Settlement Class Members (although she does not state whether she herself has made a claim for benefits or intends to). Pursuant to the Settlement, GE already has: sent out 61,765 letters authorizing Additional Warranty Protection for Settlement Class Members; provided, without charge to Settlement Class Members 3,423 new refrigerators (at an estimated total retail value of at least $13,000,000); and expended $1,893,214 for Moisture-Relate Service calls and product replacements. *See* Plainttiff's Supplemental Memorandum in Support of Plaintiff's Motion for Final Approval of Settlement, Certification of Settlement Class, Approval of Attorneys' Fees and Settlement Class Representative Incentive Award (Docket 86-1) at 16 n.10.

As Settlement Class Counsel demonstrate in their application for attorneys' fees through recitation of fact and application of relevant caselaw the fee requested herein is eminently reasonable. Indeed, when taken together, the value of these benefits far outstrips the requested fee, and makes that fee eminently reasonable.

\* \* \* \*

The simple fact is that the Settlement before the Court is fair, reasonable and adequate, which Ms. Cannivet has acknowledged repeatedly:

> "I thought it was a very good, fair adequate settlement. I was very pleased with the settlement."

*See* Fairness Hrg Tr. at 11.

> "I believed the benefits promised in the Settlement Agreement – on its face – *were exceedingly fair, reasonable and adequate.* Not only would the specific benefits remedy and rectify any concerns or problems a consumer had experienced, or might experience in the near future with their defective refrigerators, but would also reimburse Class Members for out of pocket expenses incurred for repairs or replacement units, and give them additional year of warranty protection."

Cannivet Declaration at 6.

Ms. Cannivet is not so much objecting to the Settlement as she is demanding that the Court put GE on trial and appoint her to serve as prosecutor, judge and jury, so that she can accomplish her goal of puting GE out of business. *See* Weinstein Declaration ¶11. Ms. Cannivet's objections are ill-taken and unfounded.[10] They should be overruled and should not stand in the way of approval of this Settlement.

---

[10] Ms. Cannivet's motivation for objecting to the Settlement is itself suspect. In her Statement and Plea (filed on April 27, 2006), Ms. Cannivet writes that she "neither seek[s], nor will [she] receive monetary compensation for our time invested to date, nor will any final Court approval or ruling with regards to this settlement benefit us financially any way." Statement and Plea filed by Catherine Cannivet (04/27/06) (Docket No. 74) at 4. Yet, in marked contrast to this, in a May 2005 visit to her home, Ms. Cannivet proposed that Settlement Class Counsel hire her as a paid consultant and pay her $10,000 for documents she possessed, and on May 18, 2006, Matthew K. Garvey a self-purported consultant –wrote to Settlement Class Counsel and demanded $640,000 from Settlement Class Counsel as payment for the services he rendered on behalf of Ms. Cannivet. *See* Weinstein Declaration ¶¶ 4,14. Obviously, payment to Ms. Cannivet's attorney made from the Court's award to Settlement Class Counsel would reduce her debt to him and provides her with a financial benefit.

**IV.     CONCLUSION**

The Fairness Hearing is scheduled to be held on August 21, 2006 at 1:30 p.m. to determine whether to finally approve the Settlement.  Given the scarcity of objection to the Settlement (only 4 objections received prior to the original Objection date, one timely objection received since the mailing of the Supplemental Notice and Ms. Cannivet's late objection) and given the reasons set forth in  Plaintiff's Memorandum in Support of Plaintiff's Motion for Final Approval of Settlement, Certification of Settlement Class, Approval of Attorneys' Fees and Settlement Class Representative Incentive Award (Docket No. 72-2), the reasons set forth in Plaintiff's Supplemental Memorandum in Support of Plaintiff's Motion for Final Approval of Settlement, Certification of Settlement Class, Approval of Attorneys' Fees and Settlement Class Representative Incentive Award (Docket No. 86-1) and the reasons set for  herein, it is clear that the Settlement should be approved as fair, reasonable, and adequate; the proposed Final Order and Judgment should be entered thereon; attorneys' fees and expenses should be awarded to Settlement Class Counsel; and incentive award should be paid to the Plaintiff.

Dated:  August 18, 2006                                         Respectfully submitted,

                                                                                     _____/s/_____
                                                                                     Alexander E. Barnett
                                                                                     The Mason Law Firm, P.C.
                                                                                     One Pennsylvania Plaza
                                                                                     Suite 4632
                                                                                     New York, NY 10119
                                                                                     Telephone: (212) 362-5770
                                                                                     Facsimile: (917) 591-5227
                                                                                     Email: abarnett@masonlawdc.com

Scott Wm. Weinstein
Weinstein, Bavly & Moon, P.A.
2400 First Street
Suite 303
Ft. Myers, FL 33901
Telephone: (239) 334-8844
Facsimile: (239) 334-1289
Email: scott@weinsteinlawfirm.com

Gary E. Mason
The Mason Law Firm, P.C.
1225 19th Street, NW, Suite 500
Washington, D.C. 20038
Telephone: (202) 429-2290
Facsimile: (202) 429-2294
Email: gmason@masonlawdc.com

Jonathan W. Cuneo
Charles J. LaDuca
Cuneo Gilbert & LaDuca, L.L.P.
317 Massachusetts Avenue, N.E.
Suite 300
Washington, D.C. 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
Email: jonc@cuneolaw.com
         charlesl@cuneolaw.com

William M. Audet
Alexander Hawes & Audet, L.L.P.
221 Main Street
Suite 1460
San Francisco, CA 94105
Telephone: (415) 921-1776
Facsimile: (415) 576-1776
Email: waudet@alexanderlaw.com


Counsel for Plaintiff and the Settlement
Class