**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION**

| | |
|---|---|
| **WILLIAM F. TURNER, on behalf of himself and all others similarly situated,**<br><br>       **Plaintiff,**<br><br>v.<br><br>**GENERAL ELECTRIC COMPANY,**<br><br>       **Defendant.** | **CASE NO.: 2:05-CV-186-FtM-33DNF** |

**DECLARATION OF SCOTT WM WEINSTEIN**

I, **SCOTT WM WEINSTEIN**, hereby state as follows:

1.     I am a member in good standing of The Florida Bar and Class Counsel in the above-captioned case. I submit this Declaration in support of Plaintiff William F. Turner's Motion for Appeal Bond.

2.     On or about August 6, 2005, I received Brent Davis's Objection to Proposed Settlement and Objection to Application for Attorneys' Fees. The objection was filed by and under the signature of his counsel, Michael F. Kayusa.

3.     I soon thereafter called Mr. Kayusa and asked him to explain to me the basis of his objection. Mr. Kayusa advised that he had no knowledge of the issues in the case, did not know the basis of the objection, had never spoken to Mr. Davis, and that he was merely acting as local counsel to a Texas lawyer, Jeffrey Weinstein who, he did not know personally but was, he said, Mr. Davis's counsel. Mr. Kayusa suggested I speak with Mr. Jeffrey Weinstein.

4.     I next called Jeffrey Weinstein who articulated his objection. He said that Mr. Davis had received his Notice later than some other putative class members and

therefore purportedly had less time to enjoy his extended warranty than other members of the class.  Mr. Jeffrey Weinstein told me in that first conversation that Mr. Davis' refrigerator did not exhibit any of the moisture-related problems giving rise to this action and that Mr. Davis had not required any warranty service.[1]

5.   I asked Mr. Jeffrey Weinstein if he had any suggestions to resolve his "concerns." He proposed that I ask Defendant General Electric Company ("GE") to lengthen the extended warranties on all Settlement Class Members' Refrigerators.  He advised that if GE were to agree to modify the terms of the Settlement, he (Jeffrey Weinstein) would have enhanced the value of the settlement for the Settlement Class and would be entitled to an attorney's fee.

6.   On or about August 18, 2006, I spoke by telephone with Jeffrey Weinstein.  I told him that GE would not agree to modify the terms of the Settlement, that GE's counsel had advised Settlement Class Counsel that the terms of the Settlement were negotiated based on economic and logistical considerations and that GE considered the terms, as they were, to be fair and reasonable.  In a subsequent email, Mr. Jeffrey Weinstein stated that, " [he] believe[s] it is in the best interest of the class to continue to pursue the objection and if the settlement is approved by the court, perfect an appeal." Email from Jeff Weinstein, August 18, 2006.

7.   After the conclusion of the Fairness Hearing on August 21, 2006, I met Mr. Jeffrey Weinstein and Mr. Kayusa in the hallway outside the Courtroom.  Also present were my Co-Counsel Gary E. Mason and Alexander E. Barnett and my associate,

---

[1] He later denied knowing that Mr. Davis's refrigerator was problem-free and instead asserted he "was unaware of whether Mr. Davis had a problem with his refrigerator."

Jordan Chaikin. Mr. Jeffrey Weinstein asserted, "I can't believe you had me come here and let it go this far." When I asked him what he meant, Jeffrey Weinstein responded, "Come on, Scott, you're smarter than that, you know how we could resolve this." As I knew that GE would not agree to modify the Settlement Agreement, I knew of no legal and ethical way to resolve the objection, and asked Jeffrey Weinstein for clarification. He suggested that I call him on his cellular phone later that day.

8. That afternoon, I left a voicemail on Jeffrey Weinstein's cell phone. He returned the call soon thereafter. I reiterated that I did not understand his comment that we could resolve his objection, in light of GE's position that the Settlement Agreement would not be modified. Mr. Jeffrey Weinstein responded that he "could always withdraw his objection." I told him I was delighted he was willing to do so, but Jeffrey Weinstein then told me that he would drop the objection only if he was compensated. I reminded him that the Federal Rules of Civil Procedure prohibit undisclosed agreements in class actions. In response, he told me we can "work around the rules" if Settlement Class Counsel agreed to make a $125,000 contribution to a charity of Mr. Jeffrey Weinstein's choosing. He named a specific charity to which he claimed a connection, and told me that his relationship with the charity was such that he would be able to share in the proceeds of the "contribution." Jeffrey Weinstein noted that time was of the essence as the matter of his objection was under advisement by the Court.

9. The conversation ended there and I have had no further contact with Jeffrey Weinstein. I did, however, seek advice from the Florida Bar which suggested I not disclose Mr. Jeffrey Weinstein's actions to the Court while the Objection was under advisement as the Court should rule on the Objection on its merits (or lack thereof) rather

than with knowledge of the character or motives of Jeffrey Weinstein. Now that the Court has overruled Mr. Jeffrey Weinstein's objections, it is appropriate to advise the Court of Mr. Jeffrey Weinstein's proposal.

10. On the basis of these conversations, and my awareness of Mr. Weinstein's objections and two other class actions where settlement approval is currently pending, it is my opinion that Mr. Jeffrey Weinstein is not pursuing the appeal in this matter in the interest of the class or his client. He is pursing this for his own interest in obtaining compensation for himself. He unequivocally offered to withdraw his objection even though his proposal lacked any benefit to class members.

11. My co-counsel and I have expended more than 25 hours dealing with Mr. Jeffrey Weinstein's objections to date, and anticipate at least 75 more hours in handling the appeal. My hourly rate is $350. I am advised by my co-counsel that Mr. Mason has an hourly rate of $430 and Mr. Barnett has an hourly rate of $385. At a blended rate of $388 per hour, I anticipate incurring additional attorneys' fees in excess of $30,000. I also anticipate incurring actual costs in the approximate amount of $1000.00.

I swear under penalty of perjury that the foregoing is true and correct.

Executed on October 11, 2006.

                                              Scott Wm Weinstein